Pittsburgh *v.* Cities Service Oil Company.

Argued June 2, 1971, before President Judge Bow-
Court of Common Pleas, Civil Division, of Allegheny
MAN, and Judges CRUMLISH, JR., KRAMER, WILKINSON,
JR., MANDERINO, MENCER and ROGERS.

*Bernard Markovitz,* Assistant Solicitor, with him *Justin M. Johnson,* Solicitor, for appellant School District of Pittsburgh.

*Grace S. Harris,* Assistant Solicitor, with her *Ralph Lynch, Jr.,* Solicitor, for appellant City of Pittsburgh.

*J. Robert Maxwell,* with him *Maxwell & Huss* for appellee.

OPINION BY JUDGE ROGERS, August 3, 1971:

These are consolidated appeals by the City and the School District of Pittsburgh from judgments of the Court of Common Pleas of Allegheny County awarding appellee, Cities Service Oil Company, refunds of deficiency assessments of mercantile license taxes, penalty and interest paid under protest.

Cities Service Oil Company conducted business at two locations within the City of Pittsburgh. One was a retail service station at Coltart and Bates Street; the other a business office at 32 East Carson Street. After the passage of the Act of 1947, June 20, P. L. 745, 24 P.S. 582.1 and City of Pittsburgh Ordinance 509,

approved December 15, 1948, imposing mercantile license taxes, the appellee filed its returns for the years 1949, 1950, 1951 and 1952 and paid the mercantile taxes due on its sales at the Coltart and Bates Street location. In the course of an audit made in 1951, the taxpayer's manager upon inquiry by the supervisor of mercantile taxes explained at some length the scope of the operations conducted at the Carson Street location. In April 1957, appellants audited records of appellee's operations at the Carson Street office and assessed mercantile tax deficiencies for the years 1949 through 1952 totaling with penalties and interest $47,381.65. In June 1957, the appellee paid this sum under protest and promptly filed a petition for a refund of the amount so paid.

The school taxes were levied under the authority of the Act of June 20, 1947, P. L. 745, *supra,* which provides in part as follows: "Section 8(b). The tax collector is hereby charged with the administration and enforcement of the provisions of this Act and is hereby empowered to prescribe, adopt, promulgate and enforce rules and regulations relating to any matter pertaining to the administration and enforcement of this Act, including provision for the reexamination and correction of returns, and payments alleged or found to be incorrect, or as to which an overpayment is claimed, or found to have occurred. *No assessment may be made more than five years after the date on which such taxes should have been paid, except where a fraudulent return or no return has been filed.* Any person aggrieved by any decision of the collector shall have the right to appeal to the county court of Allegheny County." (Emphasis supplied.)

The city taxes were levied pursuant to its Ordinance No. 465, approved November 29, 1956, containing an identical limitation in deficiency assessments. Since the appellants did not assess the deficiencies for the

years 1949-1952 until April 1957, the appellants' claim for those alleged deficiencies was clearly barred unless it could show that the taxpayer failed to file returns for those years or filed fraudulent returns. We agree with the trial court that the appellants proved neither.

The appellants contend that the appellee had not filed returns for statute of limitation purposes because the Carson Street address was not listed as a "business location" on its returns for the years in question. The appellants' position presupposes that a place of business as opposed to a "person" files a return under the mercantile tax law. This notion was rejected by the Superior Court of Pennsylvania in *Industrial Food Service, Inc. v. City of Pittsburgh,* 171 Pa. Super. 291, 90 A. 2d 338 (1952). The court there held that the tax here involved is imposed on the taxpayer as a person engaged in business without regard to the number of establishments maintained and that the owner of several restaurants was not required to compute taxes on additional establishments as though each was a new business. The appellee here was engaged generally in the business of supplying petroleum products to the public. It did all it was required to do when it filed its return showing the gross volume of sales it believed were subject to tax and where they were earned. Indeed, the form for return provided by the taxing bodies requires a report of gross sales and the places earned; it does not require a listing of locations at which the taxpayer may carry on business.

Neither was there proof of a fraudulent return. The appellee's former division office manager testified that he and other Cities Service executive honestly believed that the Carson Street operation was not subject to the mercantile tax. As noted, the nature of the Carson Street activities was explained to the supervisor of the appellants' mercantile tax division as early as 1951. It was not until 1955, and then only because of a

court ruling, that the appellee's activities at Carson Street as well as those of other oil companies came under scrutiny and two more years passed before audit and assessment.

The court below also concluded that the appellee's activities at Carson Street were not subject to the mercantile tax. On this record it was again clearly correct. The only description of these activities we have is that of the appellee's office manager, the auditors who in 1957 did the work leading to the assessment having since died.

The court below held that the appellee was entitled to interest on the amounts paid from the date the petitions for refund were filed in 1957.

It is settled law in Pennsylvania that ". . . where a taxpayer is entitled to a refund on an excess payment of taxes, whether such right accrues by virtue of statute or not, the taxpayer is entitled to interest on the refund if no statute or public policy militates against it." *Philadelphia and Reading Coal and Iron Company v. Tamaqua Borough School District,* 304 Pa. 489, 496, 156 A. 75, 77 (1931). It is also clear that before interest will accrue there must be an improper detention by the taxing authority; and the taxpayer must make a demand for refund. *Girard Trust Company v. City and County of Philadelphia,* 359 Pa. 319, 59 A. 2d 124 (1948). However, the taxing authority's detention of the taxpayer's money is not improper until there has been a decision to this effect. Such decision may be a county assessment board's order reducing an assessment, *Jefferson Memorial Park v. West Jefferson Hills School District,* 397 Pa. 629, 156 A. 2d 861 (1959); or a court's order on appeal from a county assessment board, *Philadelphia and Reading Coal and Iron Company v. Tamaqua Borough School District, supra;* or a court's order dismissing exceptions to a decree nisi, *Park v. Board of Education of Pittsburgh School Dis-*

*trict,* 354 Pa. 236, 47 A. 2d 222 (1946); or an appellate court decision involving the same tax and the same taxpayer but a different tax year, *Girard Trust Company v. City and County of Philadelphia, supra.* We conclude, therefore, that the appellee was not entitled to interest until the court below, on November 17, 1970, ordered the refund.

In *Koolvent Aluminum Awning Company of Pittsburgh v. City of Pittsburgh,* 192 Pa. Super. 650, 162 A. 2d 256 (1960), the taxpayer had recovered judgment against the City School District of Pittsburgh for refund of mercantile taxes. It sued for interest from the date judgment was entered. The Superior Court held that interest should be allowed, ". . . from the time when the court below told the municipalities, by entry of judgments, that they never had any right to Koolvent's money." 192 Pa. Super. 657, 162 A. 2d 259.

In *Koolvent, supra,* and *McDermott v. McDermott,* 130 Pa. Super. 127, 196 A. 889 (1938), mention is made of a tendency to allow interest in accordance with principles of equity in order to do justice in the case at hand. Such principles applied here do not suggest that this taxpayer should receive interest for the twelve years since it paid the tax and filed for refund. The record is entirely silent as to the reason for this delay. It does show that in the interval the auditors on whose work the deficiency assessment was based had died, to the disadvantage of the taxing bodies at the trial. Furthermore, the appellee as the moving party had the burden of showing why this unusual delay was not due to its failure to press for an earlier resolution.

The judgment of the Court of Common Pleas of Allegheny County is modified to include interest on the refunds from the date of the entry of judgment by the court below, November 17, 1970, and as so modified, is affirmed.

OPINION BY JUDGE KRAMER (Concurring in part and dissenting in part):

I concur with the majority in affirming the lower court holding that the appellee was not liable for the tax claimed by the appellant. I must dissent, however, on the majority's modification of the lower court's judgment as it pertains to interest on the refunds due the appellee.

This is a case where the taxpayer paid, under protest, a specific sum of money demanded by the taxing authority, which the taxing authority had no right or power to demand. The judgment of the court below was not a determination of the extent of tax liability. The court below determined that no tax was due, the taxing authority having no right to such a claim against the taxpayer. This is not a tax refund case where *the amount* of the refund was established by the court below. The amount paid had to be refunded because the taxing authority had no right or power to collect it.

From my point of view, the majority has apparently misread *Koolvent Aluminum Awning Company of Pittsburgh v. City of Pittsburgh*, 192 Pa. Super. 650, 162 A. 2d 256 (1960). In that case the taxpayer was suing to recover interest only from the date of the judgment as entered by the lower court. In *Koolvent,* the court was not asked to rule upon the payment of interest from the date the tax was initially paid in to, or a refund demanded from, the taxing authority. In *Koolvent,* the Superior Court granted to the taxpayer only that which he asked. As a matter of fact, the court volunteered in *Koolvent* a distinction between those cases wherein the judgment of the trial court determined the amount of refund and those cases wherein the amount of the refund was not in question. The court, in *Koolvent,* was very clear to restrict its opinion to the question presented under the petition of the taxpayer.

574

There is a great difference between: (1) those cases where the amount which is due the taxpayer under a refund is in issue and can only be determined by a judgment of the court below, and (2) those cases where the amount of the refund is not in issue, the only question being whether or not the entire tax which has been paid under protest was improperly collected by the taxing authority. In the former class of cases, obviously the majority ruling would apply, for in those cases no one has any way of knowing whether or not the taxpayer has a claim to a refund prior to judgment being rendered. In the latter class of cases, where the taxing authority illegally collects money from a taxpayer under circumstances where the taxpayer should never have been made to pay the taxing authority, the taxpayer has been deprived of the use of his money for that entire period of time during which the taxing authority improperly held his money. The taxpayer could very well have invested his money and perhaps earned more than simple interest during the period of time his money was improperly held.

If the majority is correct, then any taxing authority could levy mammoth tax claims against any and all taxpayers with the idea of utilizing those moneys interest-free during the several years it might take to determine the issue as to whether or not the taxing authority illegally claimed and took the taxpayer's money. Applying the theory of the majority, the City of Pittsburgh could claim a million dollar tax liability against a large corporate taxpayer, and under the threat of penalties plus interest for non-payment of the tax, obtain that sum of money from the corporation. The City thereafter would be free to utilize this money for its own purposes, knowing full well that interest on the moneys in issue would begin to be computed only after rendition of judgment by a trial court. This type of approach to the computation of interest payable on money illeg-

ally obtained from a citizen should not be permitted to stand.

Research on this question has revealed no cases exactly on point in our Commonwealth. I do note, however, an article appearing in the *University of Pittsburgh Law Review*, Vol. 22:173, 188 (1960) which touches directly upon our reading of the *Koolvent* case, *supra*: "Koolvent was claiming interest only from the date it received its lower court judgments. But Judge WOODSIDE'S reasoning, for a unanimous superior court, would seem to support interest even further back, from the date the excess tax was originally paid. He said: 'When Koolvent sought relief from the court, it was making a demand for the refund of an exact sum, representing a tax never imposed; it was not seeking a reevaluation of property upon which a legally imposed tax had been calculated. When judgment was entered against the municipalities, it became judicially determined that the municipalities were using money to which they never had a legal right.' "

It is unconscionable to deprive this taxpayer of the interest due on its money which was illegally collected and held by the taxing authority. The interest in this case should begin to run from the date demand was made by the taxpayer for return of his money illegally held. *Girard Trust Company v. City and County of Philadelphia*, 359 Pa. 319, 59 A. 2d 124 (1948).

The law review article cited above concludes with the thought that "This has too long been a one-way street. Local taxing authorities collect twelve percent combined interest and penalty on underpaid taxes back to their original due dates. It hardly seems shocking that they should now be required to pay six percent interest on over-payments back to the date they received the excessive amounts."

I would affirm the very able opinion of the learned Judge LENCHER of the court below.