Patricia A. ROGERS, Gregory M. Rogers, Jr., and Marvin A. Rogers, Individually and on behalf of all similarly situated persons

v.

BUCKS COUNTY DOMESTIC RELATIONS SECTION, Albert J. Fonash, Director of the Bucks County Domestic Relations Section, Joanne DeFeo, IRS Offset Coordinator, County of Bucks, Andrew Warren, Mark Schweiker Lucille Trench, Commissioners of the County of Bucks, Continental Bank, Commonwealth of Pennsylvania Department of Public Welfare, John F. White, Jr., Secretary of the Department of Public Welfare, Commonwealth of Pennsylvania Department of Public Welfare, Bureau of Child Support Enforcement, John F. Stuff, Director of the Bureau of Child Support Enforcement.

C.A. No. 90–7102.

United States District Court, E.D. Pennsylvania.

July 12, 1991.

769

Michael H. Landis, Smolow & Landis, Trevose, Pa., for plaintiffs.

A. Taylor Williams, Administrative Office of Pennsylvania Courts, Philadelphia, Pa., Calvin R. Koons, Office of the Atty. Gen., Harrisburg, Pa., Michael A. Klimpl, Doylestown, Pa., for defendants.

## MEMORANDUM OPINION AND ORDER

WEINER, District Judge.

*Introduction*

Plaintiffs Patricia Rogers, Gregory Rogers, Jr. and Marvin Rogers have brought this cause of action pursuant to 42 U.S.C. § 1983 on their own behalf and on behalf of all others similarly situated. The lawsuit, which also includes several pendent state law claims, challenges the policies and procedures employed by the defendants in the Tax Refund Intercept Program (TRIP). TRIP is a mechanism to satisfy past due child support obligations, arising from state court decrees, by intercepting and paying over to the custodial spouse monies otherwise due the supporting spouse from federal income tax refunds. The specific practice at issue is the defendants' failure to pay interest on these monies for the period of time they hold the funds before payment to the custodial spouse. The practice is challenged as a denial of due process and a taking of prop-

erty without just compensation. We have jurisdiction over the plaintiffs' federal claims pursuant to 28 U.S.C. § 1331, and 1343. Venue is appropriate pursuant to 28 U.S.C. § 1391(b).

Presently before the court are the cross motions of the parties for summary judgment, as well as the plaintiffs' motion for class certification. The plaintiffs seek to certify a class of all persons, parents, guardians and minor children for whom income tax refunds have been offset or intercepted to satisfy past-due support. They also seek to certify a defendant class, pursuant to Fed.R.Civ.P. 23(b)(3) of all counties, county commissioners, county domestic relations sections, domestic relations section directors, IRS offset coordinators or similarly titled and functioning officials in the Commonwealth (except for Adams, Cameron, Cumberland, Monroe, Snyder, Tioga and Warren Counties). The defendants object to class certification and have presented several affirmative defenses, including the bar of the Eleventh Amendment, the defendants' capacities to be sued, and sovereign immunity. As we find that, construing the facts in the light most favorable to the plaintiffs, the defendants are entitled to judgment as a matter of law on the merits of the plaintiffs' federal claims, their motions for summary judgment will be granted and the pendent state law claims will be dismissed for lack of jurisdiction.[1]

*Summary judgment standard*

Under Federal Rule of Civil Procedure 56(c), summary judgment may be granted when, "after considering the record evidence in the light most favorable to the non-moving party, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Turner v. Schering–Plough Corp.*, 901 F.2d 335, 340–41 (3d Cir.1990). For a dispute to be "genuine," the evidence must be such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Williams v. Borough of Chester*, 891 F.2d 458, 460 (3d Cir.1989). To establish a genuine issue of material fact, the non-moving party must introduce evidence beyond the mere pleadings to create an issue of material fact on "an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The burden of demonstrating the absence of genuine issues of material fact is initially on the moving party regardless of which party would have the burden of persuasion at trial. *First Nat'l Bank of Pennsylvania v. Lincoln Nat'l Life Ins.*, 824 F.2d 277, 280 (3d Cir.1987). Following such a showing, the non-moving party must present evidence through affidavits or depositions and admissions on file which comprise a showing sufficient to establish the existence of every element essential to that party's case. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552. If that evidence is, however, " 'merely colorable' or is 'not significantly probative,' summary judgment may be granted." *Equimark Commercial Finance Co. v. C.I.T. Financial Corp.* 812 F.2d 141, 144 (3d Cir.1987) (quoting, in part, *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11). No genuine issues of material fact remain. Thus, this matter may be resolved by summary judgment.

*Facts*

The parties have appended to their motions documentary evidence, deposition testimony and affidavits. The undisputed facts are as follows. Plaintiff Patricia A. Rogers resides in Sicklerville, New Jersey. She and Gregory Rogers, Sr. were married in 1970 and divorced in 1980. There were two children of this marriage, plaintiffs Gregory, Jr. and Marvin Rogers. They are the beneficiaries of a child support order registered in Bucks County, Pennsylvania.

The Bucks County Domestic Relations Section (BCDRS) is an entity of the Court of Common Pleas of Bucks County. It is

---

**1.** Given our resolution of the issues presented, it is unnecessary to discuss the defendants' affirm-ative defenses.

responsible for the operation of TRIP in Bucks County. Defendant Fonash is its Director. Defendant DeFeo is its IRS Offset Coordinator. Bucks County is a county of the third class. Defendants Warren, Schweiker and Trench are its incumbent County Commissioners. The Department of Public Welfare (DPW) is an administrative agency of the Commonwealth of Pennsylvania. Defendant White is the Secretary of DPW. The Bureau of Child Support Enforcement is the DPW bureau charged with the administration and operation of TRIP throughout the Commonwealth. Defendant Stuff is its Director.

Pennsylvania has adopted a State Plan for Child Support Enforcement under Title IV–D of the Social Security Act, 42 U.S.C. § 654. TRIP is part of the child support enforcement provisions of the State Plan and provides a mechanism whereby federal income tax refunds are intercepted to satisfy past-due child support obligations. The Bureau has entered into form contracts with the County Commissioners and County Domestic Relations Sections throughout Pennsylvania, whereby the counties and CDRS's agree to administer and implement TRIP under the State Plan. These form contracts, called Cooperative Agreements, obligate the County Commissioners and CDRS's in Pennsylvania to administer and implement TRIP on behalf of DPW and the Bureau.[2]

In August of each year, each county and CDRS submits a certified list to the Bureau which contains the name of each individual in arrears for child support and the amount of the arrears. The Bureau assembles and collates this information for the entire Commonwealth and submits a master computer tape of all requested intercepts to the Office of Child Support Enforcement (OCSE) of the Department of Health and Human Services. This master tape is then submitted to the Internal Revenue Service so that tax refunds may be flagged for interception.

Beginning in February of each year, and continuing through December, the Bureau receives monthly lists from OCSE of those cases where an actual intercept has occurred. The information received from OCSE includes the name of the support defendant, the amount intercepted, whether the tax refund was claimed pursuant to a joint tax return and whether the intercept involved an AFDC or non-AFDC case. The actual intercepted funds are deposited into either the Commonwealth's interest bearing "concentration account" at the Philadelphia National Bank, or the Commonwealth's "restricted receipt account", which is also interest bearing. The funds earn interest for the Commonwealth for at least four to six weeks before being paid to the CDRS's.

During this time, DPW sends each county monthly lists of the actual intercepts. In AFDC cases, the intercepted funds are retained by the Commonwealth in reimbursement for assistance provided to the support recipient. The support recipient, however, does not receive credit for this repayment for the four to six weeks it takes the Bureau to notify the local CDRS of the intercept so that the CDRS can credit the account with the repayment. In non-AFDC cases, the intercepted refunds are remitted on a monthly basis to the CDRS's approximately four to six weeks after the Bureau receives the intercept list from OCSE.

Where the intercepted refund is claimed pursuant to a joint tax return, most of the CDRS's hold these refunds for six months before releasing the money to the support recipient.[3] These funds are placed in a non-interest bearing account, or, if placed in an interest bearing account the interest earned is kept by the counties and CDRS's, rather than paid to the support recipient. AFDC cases are not charged a fee for intercept services under TRIP. Non–AFDC cases are charged a fee of $25.00, which is paid to the county not the CDRS.

---

**2.** Each of Pennsylvania's 67 counties, with the sole exception of Monroe County, has elected to participate in the TRIP program and has executed a form contract.

**3.** Five counties, Adams, Cameron, Snyder, Tioga and Warren do not retain the refunds for the six month period.

From 1984 to the present, the Bureau has instructed each county and CDRS to retain joint income tax refunds for six months. In July 1990, DPW issued a directive which instructed each county and CDRS that intercepted funds should not be placed in an interest bearing account, and that if interest was earned, it should be considered "program income", i.e. income to the county and CDRS. This directive contravened a directive issued by OCSE that interest on intercepted refunds should be paid to the support recipient, and not the state, county or CDRS. Twenty counties deposit these funds in interest bearing accounts, confiscating the earnings as program income. Only Cumberland County pays interest earned on the funds to the support recipient.

With respect to Bucks County and BCDRS, from 1985 to the time the complaint in this matter was filed $2,053,979 was collected for 4,113 AFDC cases and $1,276,722.00 was collected for 1,687 non-AFDC cases. At least 478 non-AFDC joint refunds, totaling at least $466,356.00 were held for six months in non-interest bearing accounts, without the payment of interest to the support recipient.

In the case *sub judice*, an order of support was entered in Bucks County in favor of Patricia Rogers and against the father of the two minor plaintiffs. The father failed to make the payments required by this order and, as a result, accumulated arrearages totaling $8,867.71 as of June, 1989.

On August 23, 1989, the BCDRS certified to the Bureau that the father was in arrears in the amount of $8,434.00. The Bureau sent this information to OCSE and the certified arrears were then sent the Internal Revenue Service so that the father's tax refund could be intercepted.

On May 9, 1990, the Bureau received the sum of $6,126.00, which had been intercepted from the father's 1987 federal income tax return. Five weeks later, on June 12, 1990, the Bureau sent the $6,126.00 to the BCDRS. On June 3, 1990, the Bureau received the additional sum of $124.14 which had been intercepted from the father's

1988 tax return and the sum of $2,183.00, which had been intercepted from his 1989 return. Seven weeks later, on July 16, 1990, the Bureau sent these funds to BCDRS.

Thus, BCDRS received a total of $8,433.14. These funds were deposited into a non-interest bearing checking account maintained by BCDRS at defendant Continental Bank. These funds were designated to be held for a six month period because the father had filed a joint tax return with his new spouse. On October 1, 1990, however, BCDRS paid over the money to Patricia Rogers, minus $50.00 constituting two intercept fees, because the father's new wife authorized an early release. From June 12 and July 16, respectively, to October 1, 1991, BCDRS detained the monies due the plaintiffs under the TRIP program without the payment of interest. Plaintiffs allege this action constituted a taking without just compensation in violation of Fifth and Fourteenth Amendments to the Constitution, as well as the basis for state law causes of action for breach of fiduciary duty, conversion, and unjust enrichment. Plaintiffs also seek equitable relief in the form of an injunction restraining defendants from refusing to pay interest on intercepted funds in the future.

*The merits of the plaintiffs' claims*

■ In essence, the plaintiffs' argument is that the defendants' detainment of their property without the payment of interest is a taking without just compensation. While, the meaning of "property" will normally obtain its content by reference to state law, what the constitutional concept of "property" contains within its scope is ultimately a question of federal law. *United States v. Causby*, 328 U.S. 256, 266, 66 S.Ct. 1062, 1068, 90 L.Ed. 1206 (1946); *Johnson v. U.S.*, 479 F.2d 1383, 1390, 202 Ct.Cl. 405 (1973). However, by the comprehensiveness of its term, and the fact that most property interests are created under or generated by state law, federal courts will normally look to state law to determine whether a particular interest is "property", or whether it is too remote or inchoate to be so regarded, and to determine what is

the precise extent or duration of the interests created or recognized by state law. *U.S. ex rel. T.V.A. v. Powelson,* 319 U.S. 266, 279, 63 S.Ct. 1047, 1054, 87 L.Ed. 1390 (1943); *United States v. 252.36 Acres of Land,* 336 F.Supp. 667, 668 (W.D.Pa.1972).

1972).

In the instant matter, plaintiffs argue that they possess a property interest in the intercepted tax refunds because the defendants hold the monies as a fiduciary and in trust for the plaintiffs. Thus, they argue, they have the same state law property interest in the funds, as any beneficiary to a trust has in the trust corpus held for his benefit. The state's taking of the interest these funds earn or could earn, they conclude, is a violation of the state's duty as a fiduciary and a taking without compensation. We cannot, however, accept the plaintiffs' premise. These plaintiffs, in their reliance upon the government entities sued here to intercept and pay over a delinquent spouse's income tax refund to satisfy a child support arrearage, do not possess the rights granted a trust beneficiary under state common law. Rather, the property rights they may possess in the funds while they are held by the governmental entities are primarily a function of the federal statutes and regulations which established the TRIP program.

It is undisputed that the federal statutes creating TRIP, 42 U.S.C. § 664 and 26 U.S.C. § 6402, contain no explicit schedule for general distribution of intercepted funds nor do they contain any requirement for the payment of interest. The federal regulations are similarly silent on any requirement to pay interest. 45 C.F.R. § 303.72. There is no express provision to the effect that the funds are to be held in trust or that a fiduciary relationship, benefiting the support recipient, is created by a state's participation in TRIP. There is, however, specific provision made for a state to delay, for up to six months in the case of a jointly filed tax return, the payment of the refund to the support recipient, so that the state may be ensured that the unobligated spouse has received his or her proper share of the joint refund. 42 U.S.C. § 664(a)(3)(B); 45 C.F.R. § 303.72(h)(5).

■ In the case *sub judice,* plaintiffs' intercepted refund was held in accordance with these provisions. Plaintiffs argue that a property right to interest on the TRIP funds exists, irrespective of the statutory silence, because (1) the defendants are given a choice under § 664 to delay or not delay distribution, and (2) the federal Office of Child Support Enforcement has issued a directive to all state TRIP agencies instructing them that if interest is earned it should be paid to the support recipient. They argue a taking of that property right has occurred because DPW has issued a contradictory directive to the local Pennsylvania TRIP agencies instructing them that TRIP refunds should not be held at interest, but that if interest is earned it should be considered "program income" and be retained by the agencies. These reasons do not, we find, justify a conclusion that a property right exists in the TRIP proceeds or that a taking has occurred.

First, we cannot agree that the permissive language of the federal agency's directive to the state TRIP agencies creates a property right. The directive does not contain words which command the payment of interest; it merely states that, *if* interest is earned, it *should* be paid to support recipients.

Second, plaintiffs' interpretation of the directive has been contravened by the very agency which issued it. In an affidavit, accompanying a copy of the Action Transmittal at issue here, Jo Anne B. Barnhart, Director of OCSE states that the Action Transmittal was not based on any federal statute or regulation that required States to deposit collected funds in an interest bearing account. In her deposition which followed, Barnhart testified she included this statement to more carefully explain the text of the affidavit, as prepared by plaintiffs' counsel, which inferred that the agency's position was that interest should be paid in *all* non-AFDC cases.

Third, the Action Transmittal makes reference only to Section 455(a) of the Social

Security Act. This section, codified at 42 U.S.C. § 655(a), governs payments to states, including what program income must be excluded from reported expenditures. It makes no reference to procedures for state implementation of Section 464 of the Act, 42 U.S.C. § 664, which contains the substantive requirements for a State Plan.

As such, we find the directive states no commandment to the state TRIP agencies. As the United States Supreme Court has stated

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

*Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1971). As the statutes and regulations are silent on the requirement to pay interest, the fact that the OCSE Action Transmittal provides that interest, if earned, be paid to the support recipient, fails to create the type of vested property right the Fifth Amendment to the Federal Constitution protects from seizure without compensation.

Additionally, the plaintiffs' proposition that the Due Process Clause of the Fourteenth Amendment requires a state to pay, as just compensation, interest on any funds it holds which belong to a citizen is overly broad. In support of this proposition, plaintiffs rely on *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 101 S.Ct. 446, 66 L.Ed.2d 358 (1980). *Webb's* involved the payment of monies into the registry of a state court to satisfy the claims of a corporation's creditors. The money was placed into an interest bearing account maintained by the clerk of court, but the interest was not made a part of the fund and paid to the creditors. Instead, the interpleaded money, while in the possession of the clerk, was determined by the Florida Supreme Court to be "public money" and that "[t]here is no unconstitutional taking because interest earned on the clerk of the circuit court's registry account is not

private property." 449 U.S. at 158–59, 101 S.Ct. at 449.

The United States Supreme Court reversed, holding that the money, since it was held for the benefit of private parties, could not be public property. The Court then considered the county's possible justifications for retaining the interest. It noted that as a separate fee was charged for the clerk's services, the retained interest could not be considered an additional fee. The court then stated:

> The usual and general rule is that any interest on an interpleaded and deposited fund follows the principal and is to be allocated to those who are ultimately to be the owners of that principal.

*Id.* at 162, 101 S.Ct. at 451. The Court concluded that the withholding of the interest constituted a "forced contribution to general governmental revenues", *Id.* at 163, 101 S.Ct. at 452, and a taking. This conclusion was based on the Court's determination that the "earnings of a fund are incidents of ownership of the fund itself and are property just as the fund itself is property." *Id.* at 164, 101 S.Ct. at 452.

We cannot agree with the plaintiffs' argument that *Webb's* stands for the proposition that any time any governmental entity holds any fund ultimately to be paid to a citizen for any reason a constitutionally prohibited taking occurs if it fails to pay interest. *Webb's*, as stated involved funds that the Court determined were never public funds. The purpose for the deposit into the court's registry was to determine the fund's rightful ownership from among competing claimants. The funds at issue here, the obligated spouse's federal tax refund, were indeed public funds, until the refund was claimed and processed by the Internal Revenue Service. The holding of *Webb* is not therefore directly applicable to the case *sub judice.*

■ Any right these plaintiffs have to receive interest from the defendants for the period of time the funds were detained is strictly a statutory right. While it has been recognized that the Commonwealth and its subordinate taxing authorities may be liable at common law for the payment of

interest on taxes improperly or illegally assessed, *Philadelphia and Reading Coal and Iron Company v. Tamaqua Borough School District,* 304 Pa. 489, 156 A. 75, 77 (1931); *Pittsburgh v. Cities Service Oil Company,* 2 Pa.Cmwlth.Ct. 567, 280 A.2d 463 (1971), it is also a well settled rule that a sovereign state is not liable for interest in any case except where, expressly or by reasonable construction of a contract or statute, it has placed itself in a position of liability. *In re Purdy's Estate,* 447 Pa. 439, 442, 291 A.2d 93 (1972); *Marianelli v. General State Authority,* 354 Pa. 515, 516, 47 A.2d 657 (1946). Additionally, we note the Commonwealth is not liable for the payment of interest on a tax refund absent some contrary statute. *Commonwealth v. Meadville Co-Operative Association,* 29 Pa.Cmwlth.Ct. 257, 370 A.2d 1225, 1228 (1977); *Commonwealth v. Philadelphia Gas Works,* 25 Pa.Cmwlth.Ct. 66, 358 A.2d 750, 753 (1976).

The funds at issue here are not taxes improperly or illegally assessed by the Commonwealth or a subordinate taxing authority. They are monies constituting federal tax refunds of persons obligated and delinquent in their payment of child support, which have been intercepted to satisfy those debts. They were paid to the Commonwealth and transferred to the BCDRS in accordance with federal and state statutes and regulations, none of which mandate the payment of interest by the Commonwealth or the BCDRS. We can, therefore, find no property interest created by state law, federal statute or regulation upon which a claim for an unjustly compensated taking may be based.

*Conclusion*

Having found that the plaintiffs' complaint fails to state a cause of action against these defendants for retroactive relief in the form of compensation for lost interest, or prospective relief in the form of an injunction requiring the future payment of interest, summary judgment will be entered in favor of the defendants and

against the plaintiffs on the claims brought pursuant to 42 U.S.C. § 1983, and the Fifth and Fourteenth Amendments to the United States Constitution. We will dismiss the pendent state law claims for lack of jurisdiction, without prejudice to those claims being reasserted in a state court of competent jurisdiction. Adjudication of the motions to certify a class action is thus unnecessary.[4]

**4.** The only defendant not addressed in any motion currently before the court is Continental Bank. It is alleged that Continental holds the monies collected by the other defendants and

does not pay interest. There is no allegation that it is a state actor as required by 42 U.S.C. § 1983. The claims against it are therefore defective and will be dismissed *sua sponte.*