Patricia A. ROGERS, Gregory M. Rogers, Jr. and Marvin A. Rogers Individually and on behalf of all similarly situated persons, Appellants,

v.

BUCKS COUNTY DOMESTIC RELATIONS SECTION and Albert J. Fonash, Director of the Bucks County Domestic Relations Section and JoAnne DeFeo, IRS Offset Coordinator and County of Bucks and Andrew Warren, Mark Schweiker and Lucille Trench, Commissioners of the County of Bucks and Continental Bank, All individually and on behalf of all similarly situated persons and entities and Commonwealth of Pennsylvania Department of Public Welfare and John F. White, Jr., Secretary of the Department of Public Welfare Commonwealth of Pennsylvania, Department of Public Welfare, Bureau of Child Support Enforcement and John F. Stuff, Director of the Bureau of Child Support Enforcement.

No. 91–1670.

United States Court of Appeals, Third Circuit.

Argued Feb. 13, 1992.

Decided March 30, 1992.

Michael H. Landis (argued), Ronald J. Smolow, Smolow & Landis, Trevose, Pa., for appellants.

A. Taylor Williams (argued), David M. Donaldson, Administrative Office of Pennsylvania Courts, Philadelphia, Pa., for appellees Bucks County Domestic Relations Section, Albert Fonash and JoAnne DeFeo.

Peter A. Glascott, County Sol., Michael A. Klimpl, Asst. County Sol. (argued), Bucks County Solicitor's Office, Doylestown, Pa., for appellees County of Bucks, Andrew L. Warren, Mark Schweiker and Lucille Trench.

Ernest D. Preate, Jr., Atty. Gen., Calvin R. Koons, Sr. Deputy Atty. Gen. (argued), John G. Knorr, III, Chief Deputy Atty. Gen., Com. of Pa., Harrisburg, Pa., for appellees Com. of Pa., Dept. of Public Welfare, John F. White, Jr., and John F. Stuff.

Amy E. Hirsch, Community Legal Services, Inc., Philadelphia, Pa., for amici curiae Philadelphia Citizens in Action, Maternity Care Coalition of Greater Philadelphia, and Philadelphia Unemployment Project.

Linda Wharton, Women's Law Project, Philadelphia, Pa., for amici curiae Women in Transition and Pennsylvania Nat. Organization for Women.

Before: GREENBERG, COWEN, and SEITZ, Circuit Judges.

## OPINION OF THE COURT

COWEN, Circuit Judge.

Patricia Rogers and her two children (collectively "the Rogers" or "plaintiffs"), the appellants in this matter, are participants in the Tax Refund Intercept Program (TRIP), a federal program to intercept tax refunds from delinquent parents to satisfy their past-due child support obligations. The state and county agencies which implement TRIP in Pennsylvania intercepted $6,950.94, and held the funds for four months before distributing them to the Rogers.

The Rogers have requested interest on this child support money. They have brought this action pursuant to 42 U.S.C. § 1983 (1988) and directly under the Fifth and Fourteenth Amendments, asserting that by withholding interest, the government agencies have taken the plaintiffs'

property without just compensation. We hold that any rights the plaintiffs may assert in this matter must flow from the federal statutes which create TRIP. Since neither the TRIP statutes nor the regulations promulgated thereunder require payment of interest on funds collected or held under the program, the legislation cannot be read to mandate the payment of interest or to deprive the plaintiffs of any property right. Accordingly, we will affirm the order of the district court.

## I.

## A.

The Tax Refund Intercept Program (TRIP) is a federal program which permits tax refunds to be intercepted to satisfy a variety of obligations owed by taxpayers, including child support obligations owed by delinquent parents. TRIP was established pursuant to Title IV–D of the Social Security Act, 42 U.S.C. § 654 (1988), and the Internal Revenue Code, 26 U.S.C. § 6402(c) (1988). In Pennsylvania the program is formally administered by the Bureau of Child Support Enforcement (the Bureau), a division of the Department of Public Welfare (the Department). The Bucks County Domestic Relations Section (BCDRS) is responsible, under contract with the Bureau, for the operation of TRIP and the control and disposition of intercepted refunds in Bucks County, Pennsylvania. Administration of this federal program is thus carried out at the local level by state and county agencies. In exchange for complying with federal guidelines, the federal government reimburses the states for part of the operating costs of the TRIP program. 42 U.S.C. § 655(a)(2)(C) (1988).

Once a year each county submits to the Bureau a certified list of individuals who are in arrears for child support and the amount of the arrears. The Bureau submits this information to the federal Office of Child Support Enforcement (OCSE), which in turn sends a list to the IRS so that income tax refunds can be flagged for interception. After the IRS intercepts the funds, OCSE wires the funds to the Bureau.

Intercepted tax refunds are processed differently depending upon whether the money intercepted is owed to the Commonwealth or to the custodial parent, and on whether the refund is based on a single or joint tax return. In cases where the custodial parent and children receive welfare assistance under Pennsylvania's Aid to Families with Dependent Children (AFDC) program, the intercepted funds are owed to the Commonwealth as reimbursement for its assistance and paid directly to the Department of Public Welfare. In non-AFDC cases, the funds are owed to the custodial parent. The Commonwealth receives the intercepted funds and mails a check directly to the County Domestic Relations Section. In Bucks County, the intercepted funds are held in a non-interest-bearing judiciary support account pending distribution to the family.

When refunds are intercepted from joint returns, the county may delay distribution to the custodial parent for up to six months. 42 U.S.C. § 664(a)(3)(B) (1988).[1] The delay is authorized to enable the unobligated spouse, who has filed jointly with the delinquent parent, to file an amended tax return and claim a portion of the refund as exempt from interception. The six month delay is intended to ensure that the unobligated spouse has received his or her share of the refund. *Id.;* 45 C.F.R. 303.-72(h)(5) (1991).

---

**1.** The statute provides:
> If the Secretary of the Treasury determines that an amount should be withheld under paragraph (1) or (2), and that the refund from which it should be withheld is based upon a joint return, the Secretary of the Treasury shall notify the State that the withholding is being made from a refund based upon a joint return, and shall furnish to the State the names and addresses of each taxpayer filing

> such joint return. In the case of a withholding under paragraph (2), the State may delay distribution of the amount withheld until the State has been notified by the Secretary of the Treasury that the other person filing the joint return has received his or her proper share of the refund, but such delay may not exceed six months.

42 U.S.C. § 664(a)(3)(B).

The state is permitted under the Social Security Act to charge a fee of $25.00 to individuals applying for assistance under the TRIP program. 42 U.S.C. § 664(b)(2)(B); 45 C.F.R. § 303.72(i)(2) (1991). *See also* 45 C.F.R. §§ 302.33(c) (1991). This intercept fee is automatically deducted from the support money paid to the children, and the delinquent parent receives full credit for the amount intercepted.

### B.

Patricia A. Rogers and Gregory M. Rogers were married in 1970 and divorced in 1980. They had two children. Following the divorce, Mr. Rogers remarried. Mr. Rogers failed to make child support payments required by a support order entered in Bucks County, Pennsylvania. By June 1989 he had accrued arrears totalling $8,867.71.

The Department of Public Welfare received child support money from Mr. Rogers in two installments. On May 9, 1990, the Bureau received $6,126.86 intercepted from Mr. Rogers' 1987 federal income tax return, and on June 3, 1990 it received $124.14 and $2,183 intercepted from his 1988 and 1989 tax returns. The Bureau sent these funds to the BCDRS on July 16, 1990. BCDRS held a total of $8,433.14 in a non-interest-bearing account for four months. Jennifer Rogers, the unobligated spouse, sent a letter to BCDRS stating that she did not contest the interception and application of the refund toward her husband's support arrearage. BCDRS paid the plaintiffs a total of $6,950.94 without

interest.[2] The plaintiffs were charged $50.00 ($25 for each intercept) which was deducted from the support payment.[3]

On an aggregate level, TRIP intercepts millions of dollars. Between 1985 and 1990, Pennsylvania collected over $34.7 million in child support under TRIP for 64,096 cases. Approximately $14 million was collected for 19,978 non-AFDC cases. The County Domestic Relations Sections are not required to hold these funds in interest-bearing accounts. The Bucks County Domestic Relations Section held TRIP funds in a non-interest bearing account. In twenty or twenty-one counties that did hold TRIP funds in interest-bearing accounts, earned interest was not paid to the participating families but was instead retained by the counties.

The Rogers have requested interest on the child support money that was recovered for them under TRIP, and which the county held for four months. They brought this action pursuant to 42 U.S.C. § 1983 and directly under the Fifth and Fourteenth Amendments, seeking damages, equitable relief and attorney's fees for the unlawful taking of their property without compensation and without due process under TRIP. Suit was filed individually and on behalf of a plaintiff class of all persons, parents, guardians and minor children for whom income tax refunds had been offset or intercepted. The defendants to the suit are the Bucks County Domestic Relations Section (BCDRS), the Commonwealth of Pennsylvania, the County of Bucks, and several officials of these government entities.[4]

---

**2.** The balance was paid to the unobligated spouse.

**3.** We observe that before signing the application to participate in TRIP, Patricia Rogers reviewed the conditions stated on the application, including the statement "I agree that in the event a collection results from a joint return the Domestic Relations Section can hold the money, with no interest accrued, for up to 6 months." No due process violation can properly be alleged, since the plaintiffs were on notice and consented that interest would not be paid on the tax intercept. They were not required to enter into the program, could have withdrawn any time

they desired, and at all times voluntarily participated.

**4.** The individual defendants named in the suit are John F. White, Jr., then Secretary of the Commonwealth Department of Public Welfare, John F. Stuff, Director of the Pennsylvania Bureau of Child Support Enforcement, Albert Fonash, Director of the Domestic Relations Section of the Court of Common Pleas of Bucks County, JoAnne DeFeo, IRS Offset Coordinator for BCDRS; and the Commissioners of Bucks County, Andrew L. Warren, Mark Schweiker and Lucille Trench.

The Bucks County Domestic Relations Section is a part of the Court of Common Pleas of Bucks

The district court granted the defendants' motion for summary judgment, dismissed the complaint, and denied the plaintiffs' motion for class certification as moot. *Rogers v. Bucks County Domestic Relations Section,* 773 F.Supp. 768 (E.D.Pa. 1991). The court held that the Rogers had no property interest in the tax refunds which were intercepted on their behalf under the TRIP program. *Id.* at 775.

The district court found that the plaintiffs, when relying upon the government defendants to intercept and pay over a delinquent spouse's income tax refund to satisfy a child support arrearage, did not possess the rights granted the beneficiary of a trust under state common law. *Id.* at 773. Finding that the plaintiffs' complaint failed to state a cause of action for retroactive relief in the form of compensation for lost interest or prospective relief in the form of an injunction requiring the future payment of interest, the district court entered summary judgment in favor of the defendants. *Id.* at 775. We have jurisdiction to review this determination under 28 U.S.C. § 1291 (1988).

## II.

There is no statutory requirement that state agencies collect or distribute interest on funds intercepted under the TRIP program. The federal statutory authorization for TRIP, as set out in the Internal Revenue Code, provides as follows:

Offset of past-due support against overpayments.—The amount of any overpayment to be refunded to the person making the overpayment shall be reduced by the amount of any past-due support (as defined in section 464(c) of the Social Security Act) owed by that person of which the Secretary has been notified by a State in accordance with

section 464 of the Social Security Act. The Secretary shall remit the amount by which the overpayment is so reduced to the State collecting such support and notify the person making the overpayment that so much of the overpayment as was necessary to satisfy his obligation for past-due support has been paid to the State. A reduction under this subsection shall be applied first to satisfy any past-due support which has been assigned to the State under section 402(a)(26) or 471(a)(17) of the Social Security Act, and shall be applied to satisfy any other past-due support after any other reductions allowed by law (but before a credit against future liability for an internal revenue tax) have been made. This subsection shall be applied to an overpayment prior to its being credited to a person's future liability for an internal revenue tax.

26 U.S.C. § 6402(c). The tax intercept statute is silent with respect to interest. "In interpreting a statute, the starting point is of course the language of the statute itself." *Barnes v. Cohen,* 749 F.2d 1009, 1013 (3d Cir.1984), *cert. denied,* 471 U.S. 1061, 105 S.Ct. 2126, 85 L.Ed.2d 490 (1985). If, however, the statute is silent with respect to a specific issue, "the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984).

■ In the absence of clear statutory authority to the contrary, therefore, this court must defer to the reasonable interpretations of the statute given by the governmental agencies charged with implementing TRIP. *Id.* Since the statute does not provide for interest, no statutory violation can be found unless the government

---

County, and is thus not a county agency. The Courts of Common Pleas and their Domestic Relations Sections have jurisdiction over child support matters. *See* Pa.R.Civ.P. 1910.1–1910.4; 42 Pa.Cons.Stat.Ann. §§ 951–952 (1981).

As judicial employees, the BCDRS defendants have claimed Eleventh Amendment immunity to suit under 42 U.S.C. § 1983. The County Commissioners assert that because they are not

part of Pennsylvania's judicial system, they cannot be held liable for the policies and programs of the federal government and the Courts of Common Pleas. Because of our disposition of this matter, we do not reach these defenses.

The district court dismissed Continental Bank from the case, concluding that the bank was not a state actor for purposes of 42 U.S.C. § 1983.

agencies responsible for the TRIP program are found to be implementing it improperly. We find no such violation in this case, since the agencies charged with administering TRIP have conformed to the federal statutes and guidelines for implementing the program in Pennsylvania.

Like the statute, the regulations are silent with respect to interest earnings. The regulations governing distribution of funds intercepted under TRIP allow the state agencies to delay payment up to six months in non-AFDC cases where the delinquent parent has remarried and filed a joint tax return.

> In cases where the Secretary of the Treasury, through OCSE, notifies the State that an offset is being made to satisfy non-AFDC past-due support from a refund based on a joint return, the State may delay distribution until notified that the unobligated spouse's proper share of the refund has been paid or for a period not to exceed six months from notification of offset, whichever is earlier.

45 C.F.R. § 303.72(h)(5). The interpretation given the regulation by the agency charged with its administration is entitled to great deference. *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965).

Responsibility at the federal level for oversight and implementation of TRIP belongs to the federal Office of Child Support Enforcement (OCSE), which is part of the Department of Health and Human Services. Under delegation from the Secretary of HHS, the Director of OCSE bears the primary responsibility for administering TRIP, and oversees the development of regulations, policy interpretations and guidelines that are provided to states. OCSE promulgates interpretations of regulations and statutes in the form of action transmittals, which are issued to provide guidance to the governmental agencies which operate TRIP on a local level.[5] Action Transmittal 90–8 was issued in 1990 to provide guidance as to the treatment of program income under the Child Support Enforcement Program. This transmittal deals with section 455(a) of the Social Security Act, which requires states to exclude from their reported expenditures any fees collected or other income resulting from services provided under TRIP.[6] 42 U.S.C. § 655(a) (1988). The transmittal provides that

> Interest earned on non-AFDC collections under the IV–D State plan should be distributed to the non-AFDC family. If, for some reason, this action is not performed, this interest must similarly be treated as program income and used to reduce the State's program expenditure claims for FFP.

Department of Health & Human Services, Office of Child Support Enforcement Action Transmittal OCSE–AT–90–8, August 29, 1990. OCSE thus did not require that tax refunds be placed in an interest-bearing account, and even if interest were earned, there was no requirement that the interest be paid to the family.

The Commonwealth of Pennsylvania also promulgates regulations to be followed by the Domestic Relations Sections in administering TRIP. The Pennsylvania Department of Public Welfare issued an administrative bulletin dated November 26, 1990, which stated in part that the "DPW Bureau of Child Support Enforcement recommends that Internal Revenue Service (IRS) intercept funds *not* be held in an interest bearing account." The Commonwealth also advised BCDRS in a regulatory memorandum that if interest were earned it should remain with the Domestic Relations Section

---

**5.** An action transmittal is an interpretation of either a regulation or federal statute. Unlike federal regulations, action transmittals do not go through the publication and comment periods required by the Administrative Procedures Act. 5 U.S.C. § 551 *et seq.* (1988).

**6.** This section of the Act mandates that "income resulting from services" under the child support enforcement program must be excluded from the total amount reported by the state as expenditures, when requesting federal financial participation. 42 U.S.C. § 655(a) (1988). The regulations specify that "[a]ll interest ... earned during the quarter resulting from services provided under the IV–D State plan" must be excluded from quarterly expenditure claims. 45 C.F.R. § 304.50 (1991).

rather than be distributed to support recipients.

It is clear that the TRIP statutes and regulations do not provide that interest be paid on intercepted child support arrears. No interest was earned on the Rogers' child support payments intercepted under TRIP in Bucks County. Even if interest had been earned, the Rogers were not statutorily entitled to receive it.

### III.

■ The Rogers claim that even if the TRIP statute does not specifically mandate the payment of interest, the administration of the TRIP program in Bucks County is unconstitutional because the failure to pay interest amounts to an uncompensated taking of the plaintiffs' property without due process. "[F]ourteenth amendment due process includes a substantive prohibition against state takings of private property without compensation equivalent to [the] express prohibition in the Fifth Amendment against such takings by the federal government." *Bennett v. White*, 865 F.2d 1395, 1406 (3d Cir.), *cert. denied*, 492 U.S. 920, 109 S.Ct. 3247, 106 L.Ed.2d 593 (1989). Further, 42 U.S.C. § 1983 provides a federal cause of action for the vindication of substantive violations of the Fourteenth Amendment. *Id.*

### A.

In order to establish that by paying no interest on intercepted child support payments the defendants deprived plaintiffs of their property without just compensation, the plaintiffs must show that they have a property interest in the funds intercepted under the TRIP program. To have a constitutionally protected property interest, a person must have a "legitimate claim of entitlement." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). "Property interests are often expressly created by state statutes or regulations, but they can also arise from written or unwritten state or local government policies...." *Stana v. School Dist. of Pittsburgh*, 775 F.2d 122, 126 (3d Cir.1985). The "proper-

ty" that is safeguarded by the Due Process Clause of the Fourteenth Amendment may be "created ... by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709.

The Commonwealth of Pennsylvania promulgates regulations to be followed by the Domestic Relations Sections of the Courts of Common Pleas in administering TRIP; however, these regulations do not create a property interest. The government agencies implementing TRIP in Pennsylvania have followed the applicable regulations as set forth by the federal government. These regulations do not mandate the payment of interest. Thus, the state program creates no legally protectable property right.

■ The Rogers also claim a common law property interest in the refunds that arises from their status as trust beneficiaries. Because the child support money was intercepted under TRIP for the benefit of the children, the plaintiffs contend that the funds are held by the state as a fiduciary in trust for the children, and that the state's taking of interest the funds earn or could earn constitutes a taking without just compensation. We cannot accept this premise. The plaintiffs, in relying upon the government defendants to intercept and pay over a delinquent spouse's income tax refund to satisfy a child support arrearage, do not possess the rights granted the beneficiary of a trust under state common law. They are, instead, dependent upon federal statutes and regulations which established the TRIP program, and which do not require the government agencies to accrue or distribute interest on the intercepted refunds.

■ The plaintiffs also contend they have a property interest in the refunds arising from their status as judgment creditors under state law. The Rogers are, of course, the beneficiaries of a child support order which under state law is automatical-

ly a judgment. 23 Pa.Cons.Stat.Ann. § 4352(d) (1991).[7] Here, however, the judgment is not against the government defendants but against Mr. Rogers. The government defendants are a conduit for the intercepted child support arrears. The government is not disbursing benefits, but simply facilitating a service. Consequently, no property interest is established.

The families who benefit from the TRIP program can still pursue the state enforcement mechanisms available to them. They are judgment creditors who at all times have recourse against the delinquent parent under state law. *See* 23 Pa.Cons.Stat. Ann. §§ 4341–54 (1991) (jurisdictional and enforcement provisions pertaining to support orders). Operation of the TRIP program deprives them of no entitlement; on the contrary it expedites recovery of the child support arrears. Although the government allows interception of the tax refund, the obligation remains that of the delinquent parent who was obligated under the original support decree. While the unobligated spouse may claim the refund, nothing relieves the delinquent parent of his or her obligation (including any interest on that obligation) or places the burden on the government.

Because the state regulations do not mandate the payment of interest, and because the TRIP recipients at all times have alternative enforcement mechanisms available to them, it cannot be said that the state program creates a protectable property interest.

## B.

TRIP is an assistance program that benefits families by helping them collect delinquent child support payments. It would be anomalous to hold that operation of such a program amounts to a taking. "It would be quite strange indeed if, by virtue of an offer to *provide* benefits to needy families through the entirely voluntary [assistance] program, Congress or the States were deemed to have *taken* some of those very family members' property." *Bowen v. Gilliard,* 483 U.S. 587, 605, 107 S.Ct. 3008, 3019, 97 L.Ed.2d 485 (1987) (considering takings challenge to a statute that required child support to be assigned to the state as a condition of receiving AFDC benefits) (emphasis in original).

The Supreme Court has identified three factors which determine whether a government regulation constitutes a taking: 1) the economic impact of the regulation on the claimant; 2) the extent to which the regulation has interfered with distinct investment-backed expectations; and 3) the character of the governmental action. *Penn Central Transp. Co. v. City of New York,* 438 U.S. 104, 124, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631 (1978). This court has "consistently taken a narrow view of what constitutes a taking of property by regulation." *Midnight Sessions, Ltd. v. City of Philadelphia,* 945 F.2d 667, 677 (3d Cir. 1991), *petition for cert. filed* (Jan. 27, 1992) (No. 91–1225). Before the takings inquiry is even applicable, however, there must be a property interest at stake. Since the TRIP statutes and regulations do not require the payment of interest and no property interest is created under state law, the plaintiffs have no protectable property right, and no taking has occurred.

In any event, the plaintiffs' takings claim fails to satisfy the factors set out in *Penn Central.* First, the economic impact of being deprived interest is small in relation to the entire sum intercepted, amounting in the Rogers' case to approximately $200 of potential interest income, and in most cases

---

**7.** Under Pennsylvania law, an overdue support obligation automatically becomes a judgment against the delinquent parent:

Arrears as judgments.—On and after the date it is due, each and every support obligation shall constitute a judgment against the obligor by operation of law, with the full force, effect and attributes of a judgment of court, including the ability to be enforced, and shall be entitled as a judgment to full faith and credit in this or any other state. Past due support obligations shall not become a lien upon the real and personal property of the person ordered to make such payments until the judgment or order has been entered of record in the office of the clerk of the court of common pleas in the county where the real or personal property owned by the person obligated to pay support is located....

23 Pa.Cons.Stat.Ann. § 4352(d).

is likely to involve similarly small amounts. Second, unlike most takings cases, the plaintiffs here made no investment, so the government's conduct interferes with no investment-backed expectation on their part. Finally, the character of the government's action must be considered. Since BCDRS does not earn interest on intercepted funds, this factor does not weigh in favor of finding a taking. Even if the government agencies did earn interest on the funds, federal assistance to the agencies would be reduced by the amount of interest earned. 42 U.S.C. § 655(a)(1) (1988); 45 C.F.R. § 304.50 (1991).

In support of their contention that the failure to pay interest on intercepted tax refunds constituted a taking of property without just compensation, the plaintiffs rely on *Bennett v. White*, 865 F.2d 1395 (3d Cir.), *cert. denied*, 492 U.S. 920, 109 S.Ct. 3247, 106 L.Ed.2d 593 (1989), and *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 101 S.Ct. 446, 66 L.Ed.2d 358 (1980). In *Bennett*, this court reviewed an earlier challenge to Pennsylvania's administration of the federal child support enforcement program authorized under 42 U.S.C. §§ 601–615. There the Department of Public Welfare retained child support payments in excess of the amount to which the state was entitled, and often continued to collect payments after AFDC assistance to the families had been terminated. The families brought a class action under 42 U.S.C. § 1983 alleging that state agencies deprived them of their property without due process of law. Finding that the state converted the child support funds to its own use, this court held that DPW deprived the plaintiffs of property without due process and without just compensation. *Bennett*, 865 F.2d at 1406.

Under the circumstances of *Bennett* we recognized that child support recipients had a property interest in the child support funds collected under the statute. Interest payments were deemed to be a component of just compensation and were therefore due on the improperly held funds. "[B]y collecting and retaining child support payments *to which it is not entitled*, DPW has taken property without compensation.

Pennsylvania has had the use of the class members' property; they have been deprived of such use, and its obligation to pay compensation for such use includes an interest component." *Id.* at 1406 (emphasis added).

The clear distinction between *Bennett* and the case before us is that in *Bennett* the funds were not processed in accordance with the requirements of federal law. The award of interest was predicated upon the court's finding that the county wrongfully and in complete violation of the appropriate statute withheld the plaintiffs' money. The payments intercepted on behalf of the Rogers family, in contrast, were not converted or wrongfully withheld. The interception as well as the processing and ultimate payment have all been in scrupulous adherence to federal and state law.

*Webb's Fabulous Pharmacies* is also inapposite. In *Webb's*, the Supreme Court considered competing claims to interest earned on interpleaded funds and concluded that the property interest in the funds included interest earnings. In that case, a Florida county court earned more than $100,000 in interest on certain interpleaded funds, and the Supreme Court found that the county court's retention of that interest amounted to an unconstitutional taking of property. *Webb's*, 449 U.S. at 164, 101 S.Ct. at 452. Thus it is clear that even when claims of ownership are disputed there may be a constitutionally protected property interest. The Supreme Court was careful, however, to limit its holding to the precise facts before it.

We hold that under the narrow circumstances of this case—where there is a separate and distinct state statute authorizing a clerk's fee 'for services rendered' based upon the amount of principal deposited; where the deposited fund itself concededly is private; and where the deposit in the court's registry is required by state statute in order for the depositor to avail itself of statutory protection from claims of creditors and others—Seminole County's taking unto itself ... the interest earned on the interpleader fund while it was in the registry

 

of the court was a taking violative of the Fifth and Fourteenth Amendments.

*Id.* at 164–165, 101 S.Ct. at 452–453.

Although the opinion suggests that interest flowing from a principal sum may be a protectable property interest, *Webb's* does not apply to the case before us. In *Webb's,* the county offered no reasonable justification for its conduct in retaining the funds. The Supreme Court recognized that it "has been permissive in upholding governmental action that may deny the property owner of some beneficial use of his property or that may restrict the owner's full exploitation of the property, if such public action is justified as promoting the public welfare." *Id.* at 163, 101 S.Ct. at 452. The Bucks County Domestic Relations Section, in contrast, has offered several justifications for withholding interest payments. First, the administrative costs associated with distributing earned interest would outweigh the amount of interest that could be collected under TRIP. Second, the $25 fee charged to families does not cover the actual cost to the state of administering TRIP even after federal reimbursement and, therefore, the county is entitled to retain as a service fee any interest that might be earned under the program.[8] Finally, since BCDRS deposited the funds in a non-interest bearing account, there was no interest to be retained or distributed in any event. The government's decision neither to accrue nor to pay interest on the funds does not constitute a taking without just compensation.

## IV.

The fundamental question underlying a substantive due process claim is whether a statute or regulation irrationally or arbitrarily deprives an individual of an established right. *See Harrah Indep. School Dist. v. Martin,* 440 U.S. 194, 197, 99 S.Ct. 1062, 1063, 59 L.Ed.2d 248 (1979). Since we find that the plaintiffs had no property interest in the funds intercepted under TRIP, we conclude there has been no un-

compensated taking and, consequently, no due process violation has resulted from the government's decision not to pay interest on the intercepted child support funds.

The order of the district court will be affirmed. Each party to bear its own costs.

---

8. Of course, we are not making factual findings on these two points as we recognize that this case was decided at the summary judgment stage. However, the fact that the justifications are offered indicates that, as a legal matter, the defendants' retention of interest should be analyzed as a regulation rather than an appropriation. As *Webb's* indicates in takings analysis regulations are accorded much more deference than appropriations of property.