**Harry RIVKIN**

v.

**COUNTY OF MONTGOMERY, et al.**

Civ. A. No. 92–6929.

United States District Court,
E.D. Pennsylvania.

Dec. 2, 1993.

Michael H. Landis, Smolow & Landis, Trevose, PA, for Harry Rivkin.

William J. Bryers, Fleisher, Bryers & Bryers, Spring House, PA, County of Montgomery, et al.

## MEMORANDUM

DALZELL, District Judge.

This class action raises the question of whether the Prothonotary of the Court of Common Pleas of Montgomery County, Pennsylvania, may, consistent with the United States Constitution and state law, retain interest earned on interpleaded funds in private disputes.

The parties have filed cross-motions for summary judgment, together with a joint stipulation of facts. After consideration of the parties' submissions, and after extended oral argument, we conclude that the Prothonotary's practice of taking the interest earned on interpleaded private funds is unlawful, and thus he improperly withheld $23,291.81 in interest earned on the class representative's funds in addition to the $869.20 "poundage" imposed pursuant to state law on the same principal.

*Background*

As noted, the facts necessary to our decision are undisputed, and are set forth in a joint stipulation, as supplemented by undisputed matters disclosed at the oral argument held on November 18, 1993.

In 1986, a dispute arose over competing claims to brokers' commissions in connection with the sale of Accountline Financial Services, Inc. ("Accountline"), a company of which plaintiff Rivkin was president and one of five shareholders. In granting Accountline's motion regarding the disposition of an unpaid remainder of commission, then-Montgomery

County Common Pleas Judge Anita B. Brody entered an Order, dated November 5, 1986, directing Accountline "to pay the sum of $87,169.70 to the Prothonotary in an account which the Prothonotary is hereby directed to identify with the caption of this case." On December 10, 1986, Accountline duly interpleaded the $87,169.70 in compliance with Judge Brody's Order. The Prothonotary deposited these funds into the Prothonotary's interest-bearing account at a local bank, but did not open a separate account.

Litigation ensued among the parties in interest to the brokers' commissions, and after Judge Ott had entered his specific findings and verdict in the underlying matter[1], a telephone conference took place which led to an Order, dated March 20, 1991, wherein Judge Ott required the Prothonotary "to place the sum of $87,169.70 held by him … forthwith into an interest-bearing account, with interest to be reported in the name of Harry Rivkin, social security # 165–30–3457." On April 17, 1991, the Prothonotary complied with Judge Ott's Order and placed the principal balance in a separate interest-bearing account. By this time the principal had been reduced by $2,250 for court reporter costs. The Prothonotary calculated a poundage fee on the $84,919.80 principal, in compliance with 42 Pa.Stat.Ann. § 21161, of $869.20.

In the time from December 10, 1986 through April 17, 1991, the Accountline interpleaded funds actually earned interest of $23,291.81. All such interest was remitted to the Montgomery County Treasurer.

Finally, pursuant to Judge Ott's Order of January 17, 1992, the Prothonotary that day remitted $86,728.92 to Rivkin, representing the remaining principal balance of $83,-429.50[2] plus interest of $3,299.42 from April 18, 1991 to January 17, 1992.

The parties agree that, at least from 1984, when funds are interpleaded and the referencing court order is silent concerning the payment of interest, the Prothonotary has deposited the principal into his account, and the interest earned on that account has been remitted every month to the Treasurer of Montgomery County. The Treasurer, in turn, disburses funds from that account at the direction of the Commissioners of Montgomery County solely for public purposes.

Plaintiff Rivkin demanded that defendants[3] pay him the interest earned on the interpleaded Accountline funds from December 10, 1986 to April 17, 1991, but his request was rebuffed based upon the Prothonotary's practice of retaining interest on such funds. Rivkin filed this action on December 3, 1992, pursuant to 42 U.S.C. § 1983 and state law.[4]

The defendants did not oppose plaintiff's motion for class action certification, and so on May 20, 1993 we certified a class, pursuant to Fed.R.Civ.P. 23(b)(2), consisting of "all persons and entities who received all or a portion of interpleaded funds held by the Montgomery County Prothonotary where the court order establishing the account was silent with respect to the payment of interest". The class period covered the "six years preceding the date of filing of this complaint", i.e., from December 3, 1986 to December 3, 1992. In accordance with our Orders of June 7 and 29, 1993, notice of pendency of the class action has been mailed to all individuals and entities identified as putative class members, and newspaper publication of the notice of pendency occurred on or before August 6, 1993.[5]

---

1. Although Judge Ott resolved most of the claims in his January 18, 1991 decision, there remained to be decided the competing claims of one Douglas R. Annett and the Rivkin Group to the funds deposited in accordance with Judge Brody's Order.

2. $651.00 in additional court reporter fees were deducted from the principal balance in 1991.

3. The defendants are the Prothonotary, William E. Donnelly, the Montgomery County Treasurers in office during the relevant period, the County Commissioners in office during the same period, as well as Montgomery County itself.

4. We have jurisdiction pursuant to 28 U.S.C. §§ 1343(a)(4) and 1367.

5. We were advised by class counsel at the oral argument that only one opt-out was received by the September 17, 1993 deadline.

At the oral argument on the parties' cross-motions for summary judgment, it was agreed that we should at this time only resolve the declaratory aspects of this class action. The resolution of issues of monetary or injunctive relief will be deferred until the declarations have become final.

*Legal Analysis*

■ Defendants have asserted a number of procedural defenses. Although we believe these defenses are without merit,[6] one defense deserves more than passing consideration before we turn to the merits of Rivkin's case.

A. *Does the Eleventh Amendment Bar this Action Against the Prothonotary?*

Defendants have asserted that the Eleventh Amendment precludes Rivkin's action against the Prothonotary. This argument claims that since Pennsylvania has a Unified Judicial System, 17 Pa.Stat.Ann. § 61 *et seq.*, an action against the Prothonotary is tantamount to an action against the Commonwealth that is forbidden under the Eleventh Amendment.[7] We find this argument unpersuasive.

■ In its recent canvass of Supreme Court and Circuit jurisprudence under the Eleventh Amendment, our Court of Appeals stated that the "most important" factor in determining whether an agency is entitled to Eleventh Amendment immunity is "whether any judgment would be paid from the state treasury." *Bolden v. Southeastern Pennsylvania Transp. Auth.*, 953 F.2d 807, 818 (3d Cir.1991) (in banc), *cert. denied* — U.S. ——, 112 S.Ct. 2281, 119 L.Ed.2d 206 (1992), quoting *Fitchik v. New Jersey Transit Rail Operations*, 873 F.2d 655, 659 (3d Cir.1989), *cert. denied*, 493 U.S. 850, 110 S.Ct. 148, 107 L.Ed.2d 107 (1989). The treasury of the Commonwealth of Pennsylvania is at no risk in this case. As noted earlier, it is undisputed that the Prothonotary has regularly collected the subject interest and remitted it to the Treasurer of Montgomery County. Thus, if the class is entitled to monetary relief, the funds will be paid either by the Prothonotary, or, more likely, from the treasury of Montgomery County. The Commonwealth of Pennsylvania will have nothing at all to do with the relief sought in this case.

*Bolden* and *Fitchik* also require us to look at the agency's "status under state law" and "autonomy" in resolving Eleventh Amendment immunity questions. *See* 953 F.2d at 816 and 873 F.2d at 659.

With respect to the Prothonotary's "status under state law", while, to be sure, he is subject to *general* rules of practice and procedure that the Pennsylvania Supreme Court may, from time to time, impose, the defendants have cited no such rule as the basis for what the Prothonotary has done with the interest earned on interpleaded funds. Against this general "status under state law", we take note of the specific legal reality that the Prothonotary is elected solely by the electors of Montgomery County, 16 Pa.Stat. Ann. § 401(a)(7). There is nothing we perceive in the Pennsylvania statutory scheme to outweigh the exclusively local financial interest found above.

With respect to the Montgomery County Prothonotary's "autonomy", as far as the challenged conduct here is concerned, there is no suggestion that he acted other than on his own, together with other Montgomery County officials. The questioned arrangement that has existed at least since 1984 is, according to the Prothonotary himself, one made between him and the county treasurer, and not pursuant to a formal, statewide rule of court. *See* deposition of William E. Donnelly taken on March 30, 1993, at 24–29.

---

6. For example, defendants' statute of limitations defense seems to us not well taken given the fact that the earliest Rivkin had any judicially-recognized *possible* interest in the funds in question was when Judge Ott rendered his decision on January 18, 1991, less than two years before Rivkin filed this suit.

7. The Eleventh Amendment provides:
   The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens of Subjects of any Foreign State.

Thus, given the relief sought and the facts of this case, we hold that the Prothonotary is not entitled to Eleventh Amendment immunity.[8]

### B. *Is the Prothonotary's Practice Lawful?*

■ In a case strikingly similar to this one, the Supreme Court of the United States in 1980 held that the state of Florida could not, conformably with the Taking Clause of the Fifth Amendment (as applied by the Fourteenth Amendment), appropriate the interest earned on interpleaded funds deposited into court in addition to a poundage fee deducted "for services rendered" for "receiving money into the registry of court." *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 158, 101 S.Ct. 446, 449, 66 L.Ed.2d 358 (1980).

In *Webb's Fabulous*, the Eckerd's drug store chain agreed to buy the assets of Webb's Fabulous Pharmacies, Inc. Because Webb's debts to almost two hundred creditors appeared to exceed the purchase price, Eckerd's filed an interpleader complaint against the creditors and paid the $1,812,145.77 consideration into court. The Clerk of the Seminole County, Florida, Circuit Court exacted two charges against the *res*, pursuant to two separate Florida statutes. The first was a $9,228.74 poundage fee calculated in accordance with a statutory formula.

The second charge resulted after the Florida court on its own motion appointed a receiver for Webb's. Ultimately, the receiver moved the court to pay him the over $100,000 in interest that had accumulated on the *res*. The Supreme Court of Florida held that the Clerk of the Seminole County Circuit Court,

and not the receiver, was entitled to the interest pursuant to a second Florida statute that provided, in part, that "[a]ll interest accruing from moneys deposited [into the court's registry] shall be deemed income of the office of the clerk of the circuit court. . . ." Fla.Stat. §. 28.33 (1977), quoted at 449 U.S. at 156 n. 1, 101 S.Ct. at 448 n. 1.

The question in *Webb's Fabulous* was "whether the second exaction by Seminole County amounted to a 'taking'—it was obviously uncompensated—within the [Fifth] Amendment's prescription." *Id.*, 449 U.S. at 160, 101 S.Ct. at 450. The Supreme Court unanimously held it was. Justice Blackmun wrote for the Court that:

> The earnings of a fund are incidents of ownership of the fund itself and are property just as the fund itself is property. The state statute has the practical effect of appropriating for the county the value of the use of the fund for the period in which it is held in the registry.

> To put it another way: a State, by *ipse dixit*, may not transform private property into public property without compensation, even for the limited duration of the deposit in court. This is the very kind of thing that the Taking Clause of the Fifth Amendment was meant to prevent. That Clause stands as a shield against the arbitrary use of governmental power.

449 U.S. at 164, 101 S.Ct. at 452.

Perhaps in response to *Webb's Fabulous*, the Pennsylvania General Assembly on February 14, 1986 adopted a new statute, effective March 16, 1986, that is now codified in 42 Pa.Stat.Ann. § 21161 (1993 Supp.). This statute provides, in relevant part, that:

**8.** Defendants' other immunity defenses fare no better. Absent action taken at the direction of a judge or under a court order, a Clerk of Court is not entitled to absolute judicial immunity, *McCray v. Maryland*, 456 F.2d 1, 4 (4th Cir. 1972). The Prothonotary's qualified immunity is no better than the other defendants', which depend upon the reasonableness of their action under ascertainable constitutional standards, *e.g., Harlow v. Fitzgerald*, 457 U.S. 800, 815–816, 102 S.Ct. 2727, 2737, 73 L.Ed.2d 396 (1982). We

believe there was no constitutional or statutory ambiguity calling for the exercise of official discretion after the Supreme Court's decision in *Webb's Fabulous* or after the General Assembly's adoption of what is now 42 Pa.Stat.Ann. § 21161. Indeed, if defendants' Eleventh Amendment or qualified immunity defenses had any merit, they could not survive the Supreme Court's decision in *Webb's Fabulous* where the defendant was, as here, the Clerk of Court acting pursuant to state law.

The fees to be received by the prothonotary ... of the court of common pleas of this Commonwealth in counties of the second class A [of which Montgomery County is one] *only* shall be as follows:

\*　　　　\*　　　　\*

### POUNDAGE

For the handling of money paid into court, for each dollar of the first $1,000 .................... $　.03

For each dollar of each additional $1,000 or fraction thereof ...... 　.01
[emphasis added]

As noted, the Prothonotary of the Montgomery County Court of Common Pleas has, at least since 1984, maintained a practice of retaining the interest earned on interpleaded funds where the enabling court order is silent on the subject of interest. That interest is, in turn, deposited each month into the Montgomery County General Fund, which is used for the public purposes the County Commissioners specify. This practice has continued notwithstanding the adoption of the new statute in early 1986.

Neither the parties nor we have found any Pennsylvania decision construing the new poundage statute. Counsel for the defendants maintains, however, that the Prothonotary properly construed "the handling of money" to apply only to instances where the Prothonotary acts as a manager of funds, *i.e.*, where he makes investment management decisions as to interpleaded funds. In cases where, as here, the Prothonotary acts merely as a custodian, defendants' counsel urges that the Prothonotary may also retain the interest earned on such funds, even though

the Prothonotary's services as custodian are, concededly, minuscule by comparison with what investment management entails.[9]

Although we are reluctant to enter a field to date unoccupied by a Pennsylvania state court, we cannot believe that any state court would now construe a Pennsylvania statute in such a way as to make it unconstitutional under *Webb's Fabulous*. This, however, is precisely what defendants' counsel invites us to do. To accept counsel's gloss would be to revive exactly the unconstitutional double dipping *Webb's Fabulous* condemned.[10]

But the Pennsylvania General Assembly has stated that the fees authorized under § 21161 shall be the "only" ones authorized. This can only by fair application of the English language mean that no other fee may be imposed on interpleaded funds paid into court. *See, e.g.*, the first applicable definition in X *The Oxford English Dictionary* 818 (2d ed. 1989): "2.a. One (or, by extension, two or more), of which there exist no more, or no others, of the kind." We are therefore doubly fortified in making a construction of § 21161 that, as noted, we believe *Webb's Fabulous* unambiguously mandates.

Since we construe § 21161 to mean what the General Assembly meant by "only" conformably with ordinary English usage and *Webb's Fabulous*, it would seem to us that the class's redress then will flow from state law and not from the Fifth Amendment as *Webb's Fabulous* applied it. All that is involved here are class members' post-deprivation rights to property taken from them in violation of a state law that is consistent (as construed) with *Webb's Fabulous*. The class therefore palpably has available to it proce-

**9.** See transcript of November 18, 1993 oral argument at 42–44, 48. In defendants' post-argument supplemental brief, they for the first time argue that § 21163 of 42 Pa.Stat.Ann. "specifically recognizes that there are other fees not provided for in this Act which are permissible." Defendants' Supplementary Briefing at 1. In fact, § 21163 does precisely the opposite:

(a) **Similar services.**—The fees for services not herein specifically provided for or included in any other service shall be the same as for similar services.

Thus, § 21163 confirms that § 21161's "handling of money" by any other name shall also be subject to § 21161's poundage formula.

**10.** It would also confirm a fee structure contrary to common sense and the undisputed uniform practice of money managers to charge less for custodial than investment management services. See Tr. at 44. This gloss is thus far from the "reasonable justification" the local agency persuasively proffered in *Rogers v. Bucks County Domestic Relations Section*, 959 F.2d 1268 (3d Cir.1992), upon which defendants place greatest weight. Defendants have not and could not show that the "administrative costs" of custodial services are greater than investment management services, and thus defendants' reliance on *Rogers* is misplaced.

dures under Pennsylvania law to redress the unlawful withholding of that interest. These state rights and procedures preclude this § 1983 action for the return of that property. *See Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), and its progeny.[11]

### C. *Should We Refrain from Exercising Supplemental Jurisdiction?*

■■■ Having pulled the § 1983 keystone out of this case, does the arch of this federal suit collapse with it? At oral argument both sides agreed with us that we have discretion to decide the § 21161 issue pursuant to our supplemental jurisdiction under 28 U.S.C. § 1367.[12] We have reflected carefully on whether to exercise our discretion to decline the exercise of such jurisdiction pursuant to subsection (c) of § 1367, and have concluded that the issue remaining, far from raising "novel or complex" issues of state law, presents a very straightforward problem of applying what has seemed to us to be a simple act of construing a fee statute.[13]

Given the large investment of time (and therefore money) that both sides have invested in this action, we also believe that interests of judicial, public and private economy weigh in favor of retaining supplemental jurisdiction. Most important of all, we are mindful that notices of pendency have been published and mailed to putative members of the class [14], and are concerned about confusing those people and institutions and delaying the vindication of what we have found to be their clear rights.

■■■ We therefore believe it proper to exercise our § 1367(c) discretion to hold that the Prothonotary had no authority under Pennsylvania law to retain $23,291.81 from the class representative and to withhold interest from others' accounts similarly situated during the class period in addition to imposing the statutory poundage fee. We

11. *E.g., Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). Contrary to Rivkin's argument in his supplemental brief, the *Parratt* and *Hudson* decisions remain controlling after the gloss the Supreme Court later put on those cases in *Zinermon v. Burch*, 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). *Zinermon* involved the adequacy of post-confinement procedures for people suffering mental illness when the issue in question is their competency to make a "voluntary" self-commitment. Such an issue is inextricably linked to such individuals' liberty, and thus the Court held the availability of post-commitment state law procedures to resolve competency questions does not necessarily give the minimum process the Fourteenth Amendment requires. This differs in kind from the purely monetary issue present here, of typical *Parratt* variety.

Pennsylvania excepts from governmental immunity claims that arise, as here, from the "care, custody or control of personal property of others in the possession or control of the local agency", 42 Pa.Cons.Stat.Ann. § 8542(b)(2). This post-deprivation procedure satisfies *Parratt* and *Hudson*.

12. In their Supplementary Briefing at 12–13, defendants for the first time cast this issue as one of abstention, not § 1367 supplemental jurisdiction. They claim to have learned on November 22, 1993, of a similar challenge to double fee dipping in *Murdock v. Mathers*, said to be pending in the Bradford County, Pennsylvania, Court of Common Pleas, at Equity 89–EQ–00414. Although the defendants have not favored us with copies of any filings in this alleged case, even assuming its existence, as defendants describe it, would not require our abstention, as our Court of Appeals has taught in *Gwynedd Properties, Inc. v. Lower Gwynedd Township*, 970 F.2d 1195, 1202 (3d Cir.1992) (quoting, with approval, that "[t]he rule is well recognized that the pendency of an action in the state court is no bar to proceedings concerning the same subject matter in the Federal court having jurisdiction....", *McClellan v. Carland*, 217 U.S. 268, 282, 30 S.Ct. 501, 505, 54 L.Ed. 762 (1910)).

13. Strictly speaking, of course, this issue before us is novel in the sense of new, though not in the sense of "a new kind or nature; strange", X *The Oxford English Dictionary*, 564–565, def. 2 (2d ed. 1989). The question here is, in any definitional event, in our view not far removed from construing a state speed limit statute, an enterprise that does not seem to us to introduce the concerns of federal-state comity that animate, *e.g., Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943) and its posterity.

14. According to class counsel's affidavit, ninety notices were mailed on August 6, 1993, and publication notices appeared in the *Montgomery County Law Reporter, The Times Herald* and *The Legal Intelligencer* between July 23 and August 6, 1993. As mentioned in note 5, only one individual opted out by the September 17, 1993 deadline. It is worth noting that a number of banks appeared in the listing of putative class members, and they may well appear as representations of others as, say, trustees or executors.

shall therefore make the declaration the class has sought from us, but will stay consideration of further relief pending the appellate review that we anticipate the defendants will seek as to the propriety of our declaration. An appropriate Order follows.[15]

### ORDER

AND NOW, this 2nd day of December, 1993, upon consideration of plaintiff's motion for summary judgment, defendants' motion for summary judgment, and the parties' responses thereto, and after oral argument and the receipt of post-argument supplemental briefs, and for the reasons set forth in the foregoing Memorandum, it is hereby ORDERED that:

1.  Defendants' motion for summary judgment is DENIED;

2.  Plaintiff's motion for summary judgment is GRANTED;

3.  This Court declares that as to all funds interpleaded during the class period the Prothonotary of the Court of Common Pleas of Montgomery County should have established separate interest-bearing accounts and paid the interest earned on such accounts to those persons or entities ultimately determined to be entitled to the principal;

4.  It is further declared that the Prothonotary is only authorized to impose the poundage fee calculated in accordance with 42 Pa.Stat.Ann. § 21161 on funds interpleaded into court; and

5.  The declarations set forth in ¶¶ 3 and 4 shall be STAYED, and issues relating to other relief and class counsel's entitlement to attorney's fees shall be DEFERRED, until the later of thirty-one days from the entry of this Order or final appellate review of its propriety.

---

**15.** Because of our disposition of this case, we find it unnecessary to address Rivkin's other state law claims (*e.g.,* breach of fiduciary duty and breach of contract).