**Pitts v. Tate**

*Sheila Britt,* for Pitts.
*Richard E. Tate*, pro se.

TURGEON, *J.,* November 22, 2005—Richard Tate appeals from an order issued July 27, 2005, denying his motion challenging an intercept of his federal tax refund made for the purpose of applying it to his child support arrearage. This opinion is written in support of the order denying his motion, pursuant to Pa.R.A.P. 1925(b).

## BACKGROUND

Nichole Pitts filed a support complaint June 14, 2000, by which she sought support from petitioner for the parties' daughter. After petitioner acknowledged paternity, an initial support order was entered August 22, 2003, effective June 14, 2000, requiring that petitioner, who was then incarcerated, pay $7 per week plus $3 per week for arrears. The order stated, in relevant part, as follows:

"Arrears set at $1,169 as of August 22, 2003 are due in full IMMEDIATELY. All terms of this order are subject to collection and/or enforcement by contempt pro-

ceedings, credit bureau reporting, tax refund offset certification, driver's license revocation, and the freeze and seize of financial assets. These enforcement/collection mechanisms will not be initiated as long as obligor does not owe overdue support.[1] Failure to make each payment on time and in full will cause all arrears to become subject to immediate collection by all the means listed above."

The support order was later modified July 19, 2004, effective June 3, 2004, to $70 per week plus $5 per week for arrears. This increased support obligation reflected that petitioner was out of jail and working.[2] The order stated that arrears then totaled $1,940, and included the identical language regarding collection and enforcement as set forth in the initial order, quoted above.

According to petitioner's motion,[3] on April 8, 2005, he was notified by the Dauphin County Domestic Relations section that it had intercepted his federal tax refund from the IRS, in the amount of $849, and that the

---

1. "Overdue support," as the term is used in the support order, is the amount of delinquent support, equal to at least one month's support obligation, that accrues as the result of the obligor's non-payment of the support order. Pa.R.C.P. 1910.1(c). "Past due support" is the amount of support that accrues prior to entry or modification of a support order as a result of the retroactive effect of the support order. *Id.* The arrears accrued by petitioner upon the effective date of his initial support order were "past due support."

2. Petitioner has since returned to Graterford as of March 17, 2005, following his guilty plea to drug charges. He is serving a state sentence of 15 to 30 months. *Commonwealth v. Tate,* no. 4148 CR 2004 (Dauphin Cty.).

3. The motion is titled "Petitioner's motion for an emergency hearing to redress garnishing of petitioner financial income and related matters of concern to petitioner."

Domestic Relations section intended to apply the refund to his arrears, which petitioner believed were then $2,417.51. (Petitioner's motion ¶¶1-3.) Petitioner claims that the court erred by intercepting the full amount of the refund since "only a percentage can be garnished to adjudge his debt to [the Domestic Relations section]." (¶3.) He asserts the Domestic Relations section violated his due process rights by not taking a reasonable portion (no more than one-half) of his refund, which he asserts was his principal source of income, leaving him broke, in dire straights and unable to apply the funds to other family matters. (¶¶4, 8.) He claims that it was a further violation of his due process rights that "he never/ever was notified . . . that his personal mail, including but not limited to his tax refund, would be intercepted by the domestic unit" to satisfy his child support debt. (¶¶ 6-7.) Petitioner sought an injunction or restraining order preventing the interception of his legal mail. After the Dauphin County Domestic Relations section filed an answer, I issued an order July 27, 2005, denying his motion. Petitioner thereafter filed an appeal that was docketed in the Domestic Relations section on September 16, 2005.[4]

---

4. I received a copy of petitioner's notice of appeal post-marked August 1, 2005. The notice indicated it was also served upon the attorney for the Dauphin County Domestic Relations section, who confirmed receipt of the notice of appeal around August 1, 2005. The notice of appeal was not stamped or filed in the Domestic Relations section until September 16, 2005, however, in light of these circumstances, this court assumes the notice of appeal was timely. See Pa.R.A.P. 905(a).

## LEGAL DISCUSSION

The two issues raised by petitioner were that, to the extent interception of his tax refund was permitted, the full amount of his refund should not have been seized, and also that he was not notified that the Domestic Relations section could intercept his IRS refund. Under both claims, he asserts violation of his due process rights. Before addressing these issues, it is necessary to first provide background on the IRS intercept program.

In 1975, Congress enacted the Child Support Enforcement Act, which is incorporated into the Social Security Act as title IV-D. 42 U.S.C. §651 et seq. The title IV-D program is intended to reduce state and federal expenditures often necessitated by the failure of noncustodial parents to meet their support obligations. See *Pennsylvania Department of Public Welfare v. United States HHS,* 80 F.3d 796, 799 (3d Cir. 1996). Under title IV-D, the federal government provides funding to participating states which must create plans that provide, inter alia, for the establishment of the paternity of children, location of absent parents, and collection of financial support for children through various means, such as wage withholding, property liens, withholding of unemployment compensation and interception of tax refunds. See 42 U.S.C. §§654(4), (5), (6); 664; 666(a)(1), (3), (4), (b)(1), (8). Under the intercept program, the Secretary of the Treasury is directed to intercept federal income tax refund checks made payable to persons whose child support payments are past due.[5] 42 U.S.C. §664(a)(2)(A).

5. The federal statute defines "past-due support" as "the amount of a delinquency, determined under a court order . . . for support and maintenance of a child." 42 U.S.C. §664(c)(1).

In exchange for their compliance with federal guidelines, the federal government reimburses the states part of the operating costs of the tax refund intercept program. *Id.* (citing 42 U.S.C. §655(a)(2)(C) (1988)).

In order to participate in the Child Support Enforcement program, each state must designate the IV-D agency responsible for administering the program. 42 U.S.C. §654(3). Under section 4307 of the state Domestic Relations Code, the Department of Public Welfare (DPW) has been designated the IV-D agency in Pennsylvania and provided authority to implement a tax refund intercept program pursuant to the Social Security Act. 23 Pa.C.S. §4307. The Pennsylvania program is formally administered by the Bureau of Child Support Enforcement (BCSE), a division of the DPW. The BCSE has entered into title IV-D Cooperative Agreements with each county under which the Domestic Relations sections are responsible for local and county title IV-D program operations, including operation of the intercept program and the control and disposition of intercepted refunds in the county. See http://www.dpw. state.pa.us/general (last visited 11/9/05); *Rogers v. Bucks County Domestic Relations Section,* 959 F.2d 1268, 1270 (3d Cir. 1992).

Once per year, the Domestic Relations sections throughout Pennsylvania submit to the state BCSE a certified list of individuals who are in arrears for child support and the amount of the arrears.[6] *Rogers, supra.* The BCSE in turn submits this information to the federal

6. In order to be subject to tax intercept, the parent must be past-due in his or her child support in welfare cases by $150 or more, and in non-welfare cases by $500 or more. See *Anderson v. White,* 888 F.2d 985, 988 (3d Cir. 1989) (citing 45 C.F.R. §303.72).

Office of Child Support Enforcement (OCSE), which sends a list to the IRS so that income tax refunds can be flagged for interception. *Id.* If a tax refund is due, the IRS intercepts the refund and the OCSE wires the funds to the state BCSE. *Anderson v. White,* 888 F.2d 985, 988 (3d Cir. 1989) (citing 26 C.F.R. §301.6402-5); *Rogers, supra.* The BCSE then mails a check directly to the appropriate County Domestic Relations section, which applies the funds against the obligor's arrearage.

Because the interception of a tax refund involves deprivation of the support obligor's property interest, the obligor must be afforded procedural due process; *i.e.,* notice and the opportunity to be heard. See *Presley v. Regan,* 604 F. Supp. 609, 613 (N.D.N.Y. 1985) (cases cited therein). The applicable federal law and regulations provide a two-step process: the obligor is entitled to an advance, or pre-offset, notice informing them that their tax refund is subject to interception, as well as a second notice upon interception, or at-offset. 42 U.S.C. §664(a)(3)(A) and 45 C.F.R. §303.72(e).[7] In Pennsylvania, as elsewhere, the state BCSE has the option of sending out its own notice or of permitting the federal office to send a pre-offset notice on the state's behalf. Pennsylvania, like most other states, has chosen to have the federal office send the mandatory pre-offset notice. *Anderson, supra.* The obligation to send the

7. The pre-offset notice must inform the obligor of their right to contest the state's determination that past-due support is owed or the amount of past-due support; their right to an administrative review; of the procedures and time frame for contacting the appropriate state agency to request review; and that, in the case of a joint return, the Secretary of the U. S. Treasury will notify the noncustodial parent's spouse at the time of offset regarding the steps to take to protect the share of the refund which may be payable to that spouse. 45 C.F.R. §303.72(e).

at-offset notice to the taxpayer/obligor is that of the Secretary of the Treasury. 26 U.S.C. §6402(c). Both types of notice include the name and address of the county Domestic Relations section as the agency to contact if the obligor seeks administrative review. Where an obligor does seek such review, the Domestic Relations section must conduct a review. See 45 C.F.R. §303.72(f). If the parent makes no objection or if the objections are dismissed, the tax refund is sent to the Domestic Relations section for application against the taxpayer's delinquent support obligation. *Id.*

We thus turn to petitioner's arguments. His chief claim is that the court erred by intercepting the full amount of his refund since "only a percentage can be garnished to adjudge his debt to [the Domestic Relations section]." (Petitioner's motion ¶3.) He asserts the Domestic Relations section should have taken no more than one-half of his refund. This argument is unsupported by the law. The law provides that the Secretary of the Treasury is required to withhold from a tax refund "an amount equal to the past-due support." 42 U.S.C. §664(a)(1) and (2). Thus, the law places no limit upon the amount of a tax refund that is subject to interception, so long as the amount intercepted is no greater than the total child support arrearage owed. *Id.*

With regard to petitioner's other argument, the record contradicts his assertion that he was "never/ever notified . . . that his tax refund would be intercepted by the domestic unit." (Petitioner's motion ¶¶6-7.) Both the initial and modified support orders explicitly informed him that his arrears would be subject to collection and/or enforcement, including by "tax refund offset certification"

and that such enforcement and collection would be viable if he owed overdue support.[8] To the extent petitioner is raising lack of notification as it pertains to his due process right to pre-offset notification, the Dauphin County Domestic Relations section confirmed with this court that, based upon information it received from the federal OCSE, petitioner was sent a pre-offset notice on October 15, 2003. That notice was sent to petitioner's Graterford prison address, where he was then housed.[9] Furthermore, this court would note that petitioner does not raise either of the two bases for seeking administrative review set forth in the pre-offset notice: a right to contest the state's determination that past-due support is owed or the amount of past-due support owed. 45 C.F.R. §303.72(e). Petitioner in fact admits that he owes a child support arrearage and that the amount of his arrearage is greater than the amount of the tax intercept. (Petitioner's motion, ¶3.)

Accordingly, I entered my order July 27, 2005, denying petitioner's challenge to the interception of his IRS refund for the purpose of applying it to his child support arrearage.

---

8. "Overdue support," as the term was used in the support orders, is the amount of delinquent support, equal to at least one month's support obligation, that accrues as the result of the obligor's non-payment of the support order. Pa.R.C.P. 1910.1(c). "Past due support" is the amount of support that accrues prior to entry or modification of a support order as a result of the retroactive effect of the support order. *Id.* It is clear from the record that petitioner owed overdue support at the time tax intercept proceedings were initiated.

9. A notation in the PACSES system indicates that the at-offset notice was mailed to him through the IRS on March 25, 2005.